Article 24.2a of the U.S.-France Tax Treaty provides that the United States will grant a credit against U.S. income tax for income taxes paid to France in accordance with the provisions and subject to the limitations of U.S. law. From before the treaty was signed to today, the Internal Revenue Code's foreign tax credit statutory scheme has limited the foreign tax credit to applying only against Chapter 1 taxes as set out in paragraphs 27 and 901 of the Code. The 2010 enactment of the net investment income tax in Chapter 2a... So, can we just... Yes. We obviously have dealt with this. I'm more interested in, because Judge Horne, I think, agreed with you on the issue we just talked about in the Brouillet case. Right. In paragraph 2a. Right. But then she found a separate basis in paragraph 2b for a subset of people that allows the credit. Can you just address that? I mean... Yes. Yes. We spent a lot of time on the first issue. I'm... Sure. I want to know why she's wrong on this, because it is in a different... It's a different structure and a different placement of the provisions and limitations clause. Correct. We think the court erred in two ways. First, the court read paragraph 2b.1 in isolation. It acknowledged our argument with respect to 2b.2, the resourcing provision, but it never addressed it. And, again, there would be no reason to have the resourcing rule in the first place if the parties had not understood that the code provisions apply, that the 904 limitations in specific, but the code in general. Do you have a site? I only have... I'm sorry? Do you have a site for the whole treaty in your appendix, or at least where this provision is? Is it addendum 24? So, the court erred by reading B.1 in isolation, and I would also point out that at appendix page 361, the technical explanation specifically says that 2b applies so that the credit will fit into the foreign tax credit limitation in 904. Okay. So, they're clearly anticipating that, understanding that the code applied. This... Do you feel like we have to do some kind of treaty reformation in the sense that we have to take language that's in the first paragraph and put it into the... Or first subparagraph and put it into the next subparagraph? Well, we think that the general rule in paragraph 2a does apply in 2b.1 and 2b.2, and we know that because the resourcing provision is in 2b.2, and there would be no reason for it unless the parties understood the code provisions apply. But the language is not literally in 2b. That's correct. It's literally in 2a. Correct. And now we have to sort of free our minds and imagination and say, oh, it's also in 2b. I don't think you have to. The resourcing provision would not be there if the code did not apply. If the parties had agreed the code had not applied, the source wouldn't matter. Source does matter. And although the resourcing rule affects how things work in Section 904, the foreign source limitation provision, there's nothing in 2b that limits the code to 904. In your view, 2a and 2b aren't kind of alternatives. It's 2a provides a basic rule that then applies to the rest of Section 2? Yes. Yes. 2a applies to all U.S. citizens and residents. 2b makes special rules for U.S. citizens who are residing in France who would be subject to taxation on the same income. The second error the Court made—  I mean, is there any rationale that—because this is a subset of the people, right? Yes. That could use this in b, like a U.S. citizen— U.S. citizen, yes. Residing in France. Residing in France. Correct. But the foreign tax credit can be used by U.S. citizens residing in the U.S. for a foreign income tax. If they have foreign income, yes. Right. And is there any reason to suggest that countries intended to treat those different groups of people differently? Because in the other conventions, it doesn't seem they are treated differently. Well, in the Canada Treaty, they also—paragraph 4 also— There are special rules about sourcing and stuff.  But what I mean is, is there any suggestion that U.S. citizens and U.S. residents are supposed to be subject to a different set of rules than U.S. citizens and French residents, based upon that provisions in limitations language? Right. I mean, what we have argued in our brief is the anomalous results, and one of them is that this would give U.S. citizens in France a much greater tax benefit than U.S. citizens could get under paragraph 2a. So U.S. citizens that still reside in the U.S. would get a smaller tax credit than U.S. citizens that reside in France. Correct. Under Judge Warren's interpretation. Yes. And another anomalous result is that the U.S. citizens residing in France would potentially get a double tax benefit, because they would be able to exclude foreign income under the Code, but then also under Judge Warren's reading, they would also get to get a credit against U.S. tax for that same amount of tax. Moving on to my second point, the Court also failed to apply the correct rule, which requires deference to the technical explanation. As the agency tasked with negotiating and enforcing the treaty, the executive branch's interpretation of the treaty is entitled to great weight, and the technical explanation expressly states that the resourcing provision in 2b.2 is to permit the additional credit within foreign tax credit limitations in 904. That's on the bottom of page 361. Under what circumstances does Treasury enjoy deference in these situations? When the treaty language is ambiguous, and then if Treasury announces a reasonable interpretation of an ambiguous term in a treaty, then do they get deference? No, it's not an ambiguity statement. As we've laid out in our brief, technical explanations are legitimate aids to interpretation. Although we think the text is clear in itself, the technical explanation is additional evidence certainly in support of that. Here, the Court of Federal Claims failed to give any deference whatsoever to the technical explanation. Instead, the Court required evidence that France had agreed or acquiesced to Treasury's interpretation. But the Supreme Court has never conditioned deference to the executive branch's interpretation on evidence that the other party agrees. I would note also that the taxpayers here have offered no plausible alternative explanation for why that resourcing provision in 2b2 is there. At pages 34 through 37, they lay out a very elaborate explanation. The gist of it, as I understand it, is that paragraph 2b itself provides a source-based limitation that is equivalent to section 904 of the Code, but that operates independent of it. There is no textual basis for that. 2b says nothing about a source-based limitation. All that 2b does in 2b2 is resource U.S. income to give effect to the provisions in 2b1. The actual source-based limitation is in the Code, and there would be no reason to have that resourcing provision if the Code did not apply. Are these resourcing things we're talking about for the France treaty similar to paragraphs 4 and 6 in the Canada treaty? Yes. They operate pretty much the same. The language is slightly different, but they operate the same. Can I ask you a question that came up in the earlier appeal about Chapter 1 taxes and how there are some Chapter 1 taxes that are clearly not subject to a foreign tax credit? They can't be offset. They can't be offset. Do you know, were any of those particular subset of taxes already in Chapter 1 at the time of these treaties? There were exclusions that were in the treaty at the time the parties signed it. I don't know if they were exactly the same ones, but right now those exclusions are in 26b. At the time the treaty was signed in 1980, those exclusions were listed in Section 901A itself, and there were, I believe, seven at the time, seven written into that provision at the time the treaty was signed. So since then, there have been more put into 26b? Yes. Now there's a fairly long-ish list. Even earlier, back in the Internal Revenue Code of 1954, there were three listed in 901A, and then expanded to seven, and then now there's more, but in 26b. The Court has no questions. Okay. We'll reserve the remainder of your time. Thank you. Good morning. Stuart Horwich on behalf of the Appellees Matthew and Catherine Case Christensen. In answer to the question of how the treaty came about, 24, came about as a result of the Filler case where France changed its rules and therefore they had to implement the three-bite rule that was in 24, too. However, as you can see from the plain text, there is no limitations language there. You will see from the Toulouse case where the courts, obviously we think they got the first part of the Toulouse case, got the issue wrong, but the Court was quite clear that there would be other provisions that would allow for a foreign tax credit, which pointed directly to 242B in this case. If the saving clause in Article 29, the saving clause generally provides that U.S. citizens cannot rely on the treaty, if the savings clause wanted to carve out Article 24, it specifically carved out Article 24. It didn't carve out 24.1. It didn't carve out 24.2. It carved out the whole article. On that basis, the provisions from our point of view, it's quite clear that Article 24.2 does provide an independent credit and that independent credit, assuming that you are going to take a different view from the taxpayers on what is the limitations language, what creates the result that we think. Can you talk about resourcing and isn't that what B-2 is doing and it only makes sense if the U.S. law limitation carries over to B-2? The resourcing provisions in our mind creates an item by item approach, which means that you cannot cross credit one against another and you do not need to go as far as requiring or looking to code provisions. Specifically, the way that the technical explanation makes it work, it's quite clear that the technical explanation makes it work so that you have a tax that is the source makes it an item by item approach. The argument, if I understand the government correctly, is that if we were to affirm the Court of Federal Claims on this basis, that would render the resourcing rule in 24.2B superfluous. I assume you disagree that it would be superfluous. Can you help me again understand what work it would be doing? If you looked at 24.2B.1, without the resourcing rule, it is written broadly enough that if a U.S. citizen living in France incurred French tax in excess of the U.S. tax, that that would be refunded, that the U.S. would have to provide a credit for that tax in excess of the U.S. tax that would have been charged on that item of income and the resourcing provision stops that from happening. So there's been a couple cases in the tax court and the district court. Has any other circuit looked at this issue yet, to your knowledge? No. You're the first, I'm afraid. Lucky us. Okay. Thank you very much, Mr. Horowitz. I'll just address the resourcing question again. The explanation and the example and the technical explanation that the taxpayers rely on in their brief at pages 34 through 37, I think it's more specifically at 35 and 36, specifically refers to the source-based limitation in 904. At the bottom of page 361 of the appendix, the technical explanation says that the resourcing provision is there to permit the credit to fit into the source-based limitation of section 904. In the example itself, which is at the top of page 362, it says this is how 2B works, and it walks through some of the three-byte rule. You don't have to understand the math of that example to understand that there was an excess of 7% French income tax. It expressly says that the U.S. dividend, which was U.S. source income in that example, could not be offset by the tax because it was U.S. source income. It very clearly had to be resourced in order to have the foreign tax credit applied against it. And again, the resourcing provision wouldn't be there if the code didn't apply. And so it is correct that it would render that provision superfluous if the lower court's opinion were upheld. Okay. Thank you very much. Thank you. Case is submitted.